IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
May 03, 2022 11:45 AM
SX-2022-CV-00131
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

| | |
|---|---|
| Republican Party of the Virgin Islands et al,<br><br>Plaintiff<br><br>v.<br><br>Gordon Ackley et al,<br>Defendant. | Case Number: SX-2022-CV-00131<br>Action: **Misappropriation Of Name** |

## NOTICE of ENTRY
### of
### <u>Order</u>

To: Yohana M. Manning,                           Judges/Magistrates  STT/STX
    Charlotte Summers Sheldon, Esq.      Clerk of the Court
    Scot F. McChain, Esq.                 Law Clerks - IT
                                            Law Library

Please take notice that on May 03, 2022
a(n) _____ Memorandum Opinion and Order _____
dated _____ May 3, 2022 _____ was/were entered
by the Clerk in the above-titled matter.

Dated: _May 03, 2022_

By:

                                       **Tamara Charles**
                                       **Clerk of the Court**

**Sharisse Bascombe**
**Court Clerk II**

## SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | |
|---|---|
| REPUBLICAN PARTY OF THE UNITED STATES VIRGIN ISLANDS A/G/A VIGOP, JOHN CANEGATA, INDIVIDUALLY AND IN HIS CAPACITY AS CHAIRMAN OF THE REPUBLICAN PARTY OF THE UNITED STATES VIRGIN ISLANDS, ROBERT MAX SCHANFARBER, INDIVIDUALLY AND IN HIS CAPACITY AS NATIONAL COMMITTEEMAN OF THE REPUBLICAN PARTY OF THE UNITED STATES VIRGIN ISLANDS, AND LILLIANA BELARDO DE O'NEAL, INDIVIDUALLY AND IN HIS CAPACITY AS NATIONAL COMMITTEEWOMAN OF THE REPUBLICAN PARTY OF THE UNITED STATES VIRGIN ISLANDS, <br><br> PLAINTIFFS, <br><br> V. <br><br> GORDON ACKLEY, ANOTINETTE GUMBS-HECHT, AND JEVON WILLIAMS, <br><br> DEFENDANTS. | Civil No. SX-2022-CV-131 <br><br> ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUCNTION <br><br> CITE AS: 2022 VI SUPER 49 |

Appearances:
Yohona Manning, Esq.
Scot F. McChain, Esq.
Charlotte S. Sheldon, Esq.
MCCHAIN HAMM & ASSOCIATES
Christiansted, U.S. Virgin Islands
*For Plaintiffs*

## MEMORANDUM OPINION AND ORDER

**WILLOCKS, Presiding Judge**

¶ 1    **THIS MATTER** came before the Court on Plaintiff Republican Party of the U.S. Virgin Islands a/k/a VIGOP (hereinafter "VIGOP"), Plaintiff John Canegata, individually and in his capacity as Chairman of the VIGOP (hereinafter "Canegata"), and Plaintiff Robert Max

Schanfarber, individually and in his capacity as the National Committeeman of the VIGOP

(hereinafter "Schanfarber"), and Plaintiff Lilliana Belardo De O'Neal, individually and in her

capacity as the National Committeewoman of the GOP's (hereinafter "O'Neal" and together with

VIGOP, Canegata, and Schanfarber, "Plaintiffs") motion for temporary restraining order and

preliminary injunction, filed on April 8, 2022.

## BACKGROUND

¶ 2    On April 8, 2022, Plaintiffs filed a verified complaint against Defendant Gordon Ackley

(hereinafter "Ackley"), Defendant Antoinette Gumbs-Hecht (hereinafter "Gumbs-Hecht"), and

Defendant Jevon Williams (hereinafter "Williams" and together with Ackley and Gumbs-Hecht,

"Defendants") in an action for a temporary restraining order, preliminary injunction, and

permanent injunction. In the complaint, Plaintiffs alleged, inter alia: (i) the VIGOP is "the only

recognized United States Virgin Islands affiliate of the national Republican Party." (Compl. ¶ 43);

(ii) The individual plaintiffs are current officeholders of the VIGOP—to wit, Canegata is the

Chairman of the VIGOP, Schanfarber is the National Committeeman of the VIGOP, and O'Neal

is the National Committeewoman of the VIGOP. (Compl. ¶¶ 7-9); (iii) Defendants and their

associates have engaged in longstanding rivalries with the individual Plaintiffs—Canegata,

Schanfarber, and O'Neal—for the control of the VIGOP. (Compl. ¶¶ 12-41); (iv) "Most recently,

Defendants held an illegal caucus on March 29, 2022, which was not sanctioned by the V.I. Board

of Elections and was not held in conformity with Virgin Islands law." (Compl. ¶ 35); (v) "At the

illegal [March 29, 2022] caucus, the Defendants have similarly created confusion and utilized voter

intimidation methods to attempt the overthrow of VIGOP leadership and the Plaintiffs' duly

elected positions within the Party." (Compl. ¶ 36); and (vi) "Defendants are wrongfully using the

name, symbol, emblem and insignia of the national Republican Party, namely, an elephant with three stars across its back, without Plaintiffs' consent in violation of Title 18 V.I.C. § 301(c)." (Compl. ¶ 45); and (vii) "Defendants are using the name, symbol, emblem and insignia of the VIGOP and the national Republican Party to represent themselves as the official VIGOP." (Compl. ¶ 46.)

¶ 3    On the same date, August 8, 2022, Plaintiffs filed this instant motion and attached the affidavit of Plaintiffs' counsel Yohana Manning, Esq., dated April 7, 2022 (hereinafter "Manning Affidavit"), and the affidavit of Canegata, in his capacity as Chairman of the VIGOP acting on behalf of the VIGOP, dated April 7, 2022 (hereinafter "Canegata Affidavit"), in support of Plaintiffs' motion pursuant to Rule 65(b)(1)(B) and Rule 84(a) of the Virgin Islands Rules of Civil Procedure. According to the Manning Affidavit, Defendants were served with a copy of the motion, the proposed order thereto, and the Canegata Affidavit via hand-delivery. (Manning Aff. ¶ 2.) As of the date of this Memorandum Opinion and Order, no opposition has been filed.[1]

## STANDARD OF REVIEW

¶ 4    Rule 65 of the Virgin Islands Rules of Civil Procedure (hereinafter "Rule 65") governs injunctions and restraining orders. "[A] TRO is civil equitable relief granted for the purpose of preserving the status quo." *In re Najawicz*, 52 V.I. 311, 335 (V.I. 2009); *see Appleyard v. Juan F. Luis Hosp. & Med. Ctr.*, 2014 V.I. LEXIS 56, *4 (V.I. Super. Ct. July 28, 2014) (unpublished) ("A temporary restraining order is a stop-gap procedural device to preserve the status quo until a preliminary or permanent injunction can be considered."). While "temporary restraining orders

---

[1] Rule 6-1 of the Virgin Islands Rules of Civil Procedure provides that "[n]othing herein shall prohibit the court from ruling without a response or reply when deemed appropriate." V.I. R. Civ. P. 6-1(f)(6). Here, the Court finds it appropriate to rule on Plaintiffs' motion without a response from Defendants.

fall within an exception to the general rule requiring notice and an opportunity to be heard," *Wessinger v. Wessinger*, 56 V.I. 481, 489 n.9 (V.I. 2012), the Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." V.I. R. CIV. P. 65(b)(1). "Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk of court's office and entered in the record." V.I. R. CIV. P. 65(b)(2). On the other hand, the Court "may issue a preliminary injunction only on notice to the adverse party." V.I. R. CIV. P. 65(a).

¶ 5    Precedents from the Virgin Islands Supreme Court established that the Superior Court must consider four factors when deciding a motion for a temporary restraining order and preliminary injunction: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 550 (V.I. 2015). The moving party has "the burden of making some showing on all four injunction facts." *Id.*, 63 V.I. at 557. The Virgin Islands Supreme Court instructed that, in evaluating the injunctive motion, the Superior Court "must evaluate the moving party's showing on all four factors under a sliding scale standard" and that "[i]n conducting this sliding-scale

analysis, the Superior Court must make findings on each of the four factors and determine whether — when the factors are considered together and weighed against one another — the moving party has made a clear showing that [it] is entitled to [injunctive] relief."[2] *Id.*

¶ 6     Under Rule 65, "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required" and that "[t]he order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." V.I. R. CIV. P. 65(d)(1) and (2). Furthermore, under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" but "[t]he Government of the Virgin Islands, its officers, and its agencies are not required to give security." V.I. R. CIV. P. 65(c). The temporary restraining order expires at the time after entry -- not to exceed 14 days -- that the

---

[2] In *3RC & Co.*, the Virgin Islands Supreme Court explained that "because courts of equity developed these remedies in order to provide relief that was unavailable in courts of law, [i]t is axiomatic that equitable relief is only available where there is no adequate remedy at law" and "[t]his is why a party seeking injunctive relief must demonstrate that the injunction is necessary to avoid certain and imminent harm for which a monetary award does not adequately compensate — in other words, harm without an adequate legal remedy." 63 V.I. at 554 (internal quotation marks and citation omitted). However, the Virgin Islands Supreme Court pointed out that "irreparable injury [alone] is not enough to support equitable relief, [t]here must be a plausible claim on the merits" and "[a]s a result, in some cases, the showing on the merits may be as minimal as simply making out a prima facie case if the showing on the moving party's likelihood of irreparable harm is strong enough — and the likelihood that the injunction would cause irreparable harm to the nonmoving party is low enough — to outweigh the weaker showing on the merits." *Id.*, 63 V.I. at 554-55. Nevertheless, the Virgin Islands Supreme Court also pointed out that "[a]lthough the primary reason for granting a preliminary injunction is to prevent irreparable harm, this factor is less decisive where the likelihood of success on the merits is very strong." *Id.*, 63 V.I. at 556 (internal quotation marks and citation omitted). Finally, as to the public interest factor, the Virgin Islands Supreme Court noted that this factor "will typically favor the moving party if [it] demonstrates both a likelihood of success on the merits and irreparable injury." *Id.*, 63 V.I. at 556 (internal quotation marks and citation omitted).

court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension" and "[t]he reasons for an extension must be entered in the record." V.I. R. CIV. P. 65(b)(2).

## DISCUSSION

### I.     The Four Factors

¶ 7     Plaintiffs, the moving party, have the burden of making some showing on all four factors. *3RC & Co.*, 63 V.I. at 557. The Court will address the four factors in turn.

#### a.     Whether Plaintiffs have shown a reasonable probability of success on the merits

¶ 8     As to the first factor, Plaintiffs argued that they "have a high probability of success on the merits based on the fact that this identical issue has already been raised before this Court [in *Canegata v. Schoebaum*, 64 V.I. 252 (V.I. Super. Ct. May 27, 2016)] and this Court granted the injunction." (Motion 4). Plaintiffs made the following assertions in support of their argument: (i) "Defendants… misus[ed] the name and symbol of the VIGOP and the national Republican Party to represent themselves as the official VIGOP for the purpose of holding the illegal 2022 caucus and electing a new leadership." (Id., at 3); (ii) "Pursuant to [Title] 18 V.I.C. § 301(c), Defendants are neither authorized to use, nor have been given the express consent of the VIGOP to use the symbol, emblem, or insignia of the national [Republican] Party and therefore, an injunction to restrain them from such usage is necessary." (Id., at 4); (iii) "In [*Canegata*], the defendants, who are affiliated with the present Defendants, replaced the unauthorized image with a similar image, yet this Court still found that they were in violation of [Title 18 V.I.C.] § 301(c)." (Id. at 5) (emphasis omitted); (iv) "Here, where Defendants have used the exact VIGOP image, an elephant with three stars, the result must be the same." (Id.); and (v) "[T]his Court previously held [in

*Canegata*] that Plaintiffs showed a reasonable probability of success on the merits in regard to Defendants' misappropriation of the [VIGOP's] name, as they have done in the present matter."
(Id.)

¶ 9    In order to show a reasonable probability of success on the merits, [the moving party does not have to] show that [it] will actually prevail on the merits at trial, or that [its] success is more likely than not, only that [it] has a reasonable chance, or probability, of winning." *Yusuf v. Hamed*, 59 V.I. 841, 849 (V.I. 2013). Under the sliding-scale standard, the Court "may grant an injunction with an even weaker showing on the merits than that articulated in *Yusuf* if the Superior Court concludes that the moving party has made a strong enough showing on the other three factors to nonetheless establish a clear showing that [it] is entitled to [injunctive] relief." *3RC & Co.*, 63 V.I. at 556 n.5 (internal quotations marks and citations omitted).

¶ 10    Here, Plaintiffs essentially raised the following two claims in this lawsuit: (i) Defendants' use of the VIGOP's name in connection with the March 29, 2022 caucus without Plaintiffs' consent was a misappropriation of the VIGOP's name and (ii) Defendant's use of the national Republican Party's (hereinafter "GOP") symbol, emblem, or insignia in connection with the March 29, 2022 caucus without Plaintiffs' consent violated Title 18 V.I.C. § 301(c).[3] In their complaint, Plaintiffs

---

[3] Title 18 V.I.C. § 301 provides:

> (c) Whenever a political party in the Virgin Islands affiliates with a national political party, committee, convention or organization, regardless of when such affiliation took place, no association, group, club, organization or instrumentality shall use the symbol, emblem, or insignia, of the national political party, convention, committee or organization which has affiliated with a Virgin Islands political party, without the express consent in writing from the chairman and secretary of the Virgin Islands political party filed with the Supervisor of Elections. A petition for an injunction to restrain such association, club, group or instrumentality from using such symbol, emblem, or insignia may be filed in the District Court by the officers of said affiliated political party and/or the Supervisor of Elections.

> Title 18 V.I.C. § 301(c).

In their motion, Plaintiffs appear to consider the VIGOP's symbol, emblem, or insignia and the GOP's symbol, emblem, or insignia as one and the same and therefore interchangeable. For example, as to the first factor, Plaintiffs argued that "[p]ursuant to [Title] 18 V.I.C. § 301(c), Defendants are neither authorized to use, nor have been given

alleged that VIGOP is "the only recognized United States Virgin Islands affiliate of the national Republican Party" and that the individual plaintiffs are current officeholders of the VIGOP. (Compl. ¶¶ 7-9, 43.) This means that the VIGOP, and those in control of the VIGOP, may lawfully prevent the misappropriation of the VIGOP's name by Defendants, who were not functioning under the aegis of the VIGOP. This also means, that under Title 18 V.I.C. § 301(c), Defendants were prohibited to use the GOP's symbol, emblem, or insignia "without the express consent in writing from the chairman and secretary of the [VIGOP]." As such, the Court finds that Plaintiffs have shown a reasonable probability of success on the merits of Plaintiffs' claims. *See Yusuf*, 59 V.I. at 849 (noting that the moving party "only [has to show] that [it] has a reasonable chance, or probability, of winning"). Accordingly, this factor weighs in favor of the issuance of a temporary restraining order to enjoin Defendants from using the VIGOP's name and the GOP's symbol, emblem, or insignia.

---

the express consent of the VIGOP to use **the symbol, emblem, or insignia of the national [Republican] Party** and therefore, an injunction to restrain them from such usage is necessary," (Motion 4), but as to the second factor, Plaintiffs argued that they will "be irreparably harmed by Defendants' continued usage of the **VIGOP symbol, emblem, and insignia**," (Id., at 5) (emphasis added.) In another example, Plaintiffs argued that "Defendants have...usurped the official **USVI GOP name and symbol** without authorization...at the illegal March 29, 2022 caucus" when they "improperly affixed the **VIGOP name and symbol** in relation to the unsacmtioned [sic] caucus in an attempt to achieve some level of legitimacy," (Id., at 2), but then requested the Court to "enjoined from further using the VIGOP name and **national [Republican] Party's symbol** for the purpose of holding elections or otherwise," (Id., at p. 3) (emphasis added.) However, Plaintiffs themselves acknowledged that the VIGOP and the GOP each has its own distinct symbol, emblem, or insignia—to wit Plaintiffs described "an eagle holding an olive branch and three arrows" as a VIGOP symbol and "an elephant with three stars in the middle" as a GOP symbol. (Id.)

This may be a nuanced distinction, but it is an important distinction because arguably, Plaintiffs may have intended to raise a third claim as to Defendants' use of the VIGOP's symbol, emblem, or insignia in connection with the March 29, 2022 caucus without Plaintiffs' consent. However, Title 18 V.I.C. § 301(c) only specifically addresses the GOP's symbol, emblem, or insignia and not the VIGOP's symbol, emblem, or insignia. Furthermore, Plaintiffs did not set forth any concise arguments as to a claim for misappropriation of the VIGOP's symbol, emblem, or insignia; Plaintiffs only stated in passing that "this Court previously held [in *Canegata*] that Plaintiffs showed a reasonable probability of success on the merits in regard to Defendants' misappropriation of the [VIGOP's] **name**, as they have done in the present matter." (Motion 5) (emphasis added.) Plaintiffs cannot and should not expect the Court to make the argument for them when they have failed to do so. *See Joseph v. Joseph*, 2015 V.I. LEXIS 43, *5 (V.I. Super. Ct. Apr. 23, 2015) ("[I]n general, the Court will not make a movant's arguments for him when he has failed to do so."). Thus, the Court will only address the two claims mentioned above, and for the purposes of this motion, any reference to Defendants' use of the VIGOP's symbol, emblem, or insignia will be considered to include the GOP's symbol, emblem, or insignia.

### b. Whether Plaintiffs will be irreparably injured by denial of the relief

¶ 11    As to the second factor, Plaintiffs argued that they will "be irreparably harmed by Defendants' continued usage of the VIGOP symbol, emblem, and insignia." (Motion 5.) Plaintiffs made the following assertions in support of their argument: (i) Defendants are not authorized to use the symbol and their continued usage will cause confusion between the legitimate VIGOP and the rogue individuals who are improperly portraying to this jurisdiction that they are in fact, the VIGOP. (Id.); (ii) Defendants' "blatant tactic" of using "the VIGOP symbol, emblem, and insignia and purported the voters to be the leadership and that the [March 29, 2022] caucus was legitimate…will almost certainly cause the VIGOP embarrassment and to lose their reputation and credibility both locally and nationally." (Id.); and (iii) "The Court previously held that… the plaintiffs in *Canegata*, which are also similar Plaintiffs here, would face 'immediate, irreparable harm if the danger of confusion is allowed to persist." (Id.)

¶ 12    "Irreparable harm is certain and imminent harm for which a monetary award does not adequately compensate." *Yusuf*, 59 V.I. at 854 (internal quotation marks and citations omitted). This test is satisfied if the moving party "can demonstrate that its monetary damages are either difficult to ascertain or are inadequate." *Id.* (internal quotation marks and citations omitted). Accordingly, when "the record indicates that [the moving party's loss] is a matter of simple mathematic calculation, [the moving party] fails to establish irreparable injury for preliminary injunction purposes." *Id.* (internal quotation marks and citations omitted). Furthermore, "loss of control of reputations and loss of good will are established grounds for irreparable injury." *See e.g., Canegata*, 64 V.I. at 264-65.

¶ 13    As noted above, Plaintiffs alleged in the complaint that VIGOP is "the only recognized United States Virgin Islands affiliate of the national Republican Party" and that the individual plaintiffs are current officeholders of the VIGOP. (Compl. ¶¶ 7-9, 43.) Thus, having Defendants use the VIGOP's name and the GOP's symbol, emblem, or insignia will invariably create confusion surrounding the VIGOP—citizens may approach Defendants, rather than Plaintiffs, for information regarding the VIGOP, or citizens may receive conflicting information regarding the VIGOP from Plaintiffs and Defendants—and such confusion will certainly negatively impact the VIGOP's reputation and credibility. These harms are real but difficult to quantify and cannot be adequately compensated by a monetary award. However, there is no indication that Plaintiffs will suffer immediate harm—to wit, Plaintiffs alleged that Defendants used the VIGOP's name and the GOP's symbol, emblem, or insignia—namely, "an elephant with three stars"— in connection with the March 29, 2022 caucus, but Plaintiffs never alleged that Defendants are still currently using the VIGOP's name and the GOP's symbol, emblem, or insignia or that Defendants are holding an event soon where Defendants may use the VIGOP's name and the GOP's symbol, emblem, or insignia.[4] *See Yusuf*, 59 V.I. at 854 (internal quotation marks and citations omitted) ("Irreparable harm is certain and imminent harm for which a monetary award does not adequately compensate."); *cf. Canegata*, 64 V.I. at 265-66 ("Additionally, given that the territorial convention called by Defendants is scheduled to take place in a few days, Plaintiffs will suffer immediate irreparable harm if the danger of confusion is allowed to persist."); *V.I. Conservation Soc'y v. Golden Resorts, LLLP*, 2010 V.I. Supreme LEXIS 21, at *6 (V.I. 2010) (acknowledging that "[t]he

---

[4] In the section discussing background in the complaint and the motion, Plaintiffs mentioned prior incidence of improper use of the VIGOP's name and/or the GOP's symbol, emblem, or insignia by Defendants and/or their associates in 2016 and 2020, which have already been addressed in separate lawsuits.

Superior Court initially denied the motion for a temporary restraining order ("TRO"), finding that construction did not appear imminent [but], after VICS asserted that Golden had brought earth-moving equipment to the construction site, the trial court issued a TRO"). Accordingly, this factor weighs against the issuance of a temporary restraining order to enjoin Defendants from using the VIGOP's name and the GOP's symbol, emblem, or insignia.

### c. Whether granting preliminary relief will result in even greater harm to Defendants

¶ 14   As to the third factor, Plaintiffs argued that "[a] preliminary injunction will not result in any harm to the non-moving party, as they have no claim to any interest in the [VIGOP] name…or the symbol, emblem, or insignia that they have used to the tout the illegal 2022 caucus and gain votes to overthrow the current leadership." (Motion 6.) Plaintiffs made the following assertion in support of their argument: "In the similar 2016 action[, *Canegata*,] this Court held that this factor also weighed in favor of a temporary restraining order, where the improper use of the VIGOP symbol, emblem, and insignia by the rogue individuals would cause potential confusion."[5] (Id.)

¶ 15   The Virgin Islands Supreme Court instructed that "[i]n determining whether Yusuf and United will be harmed by the injunction, the Superior Court was required to examine whether, and to what extent[,] … the [the nonmoving parties] will suffer irreparable harm if the preliminary injunction is issued." *Yusuf*, 59 V.I. at 856 (internal quotation marks and citations omitted).

¶ 16   Here, there is no indication that Defendants will suffer irreparable harm by the issuance of a temporary restraining order to enjoin Defendants from using the VIGOP's name or the GOP's

---

[5] The Court must note at the outset that, contrary to unlike what Plaintiffs claimed, the *Canegata* court did not address the improper use of the VIGOP's symbol, emblem, or insignia. In *Canegata*, the court weighed the four factors and issued a temporary restraining order to enjoin Defendants from using the "Republican Party of the U.S. Virgin Islands" name and "the symbol, emblem, or insignia of the Republican National Committee, namely the red, white and blue elephant logo upholding stars across its back." 64 V.I. at 268.

symbol, emblem, or insignia, none of which Defendants are entitled to use without Plaintiffs' consent. Like the *Canegata* court, the Court similarly emphasizes that the Court is not commenting on Defendants' right to espouse their cause or vigorous opposition to the present party leadership, and that Defendants may continue to advocate for their cause. The only issue before the Court concerns Defendants' use of the VIGOP's name and the GOP's symbol, emblem, or insignia. If, after weighing the four factors, the Court issues a temporary restraining order to enjoin Defendants from using the VIGOP's name and the GOP's symbol, emblem, or insignia, the order would not enjoin Defendants from advocating their cause. Accordingly, this factor weighs in favor of the issuance of a temporary restraining order to enjoin Defendants from using the VIGOP's name and the GOP's symbol, emblem, or insignia.

### d. Whether granting the preliminary relief will be in the public interest

¶ 17    For the last factor, Plaintiffs argued that "[g]ranting the requested injunction is in the public interest, as it is in direct support of the law of this jurisdiction, [Title 18 V.I.C. § 301, and reinforces the important principle that individuals cannot improperly assume the identity of a political party without consequences." (Motion 6.) Plaintiffs made the following assertions in support of their argument: (i) To allow Defendants to use the VIGOP's name and the GOP's symbol, emblem, or insignia "only leads to chaos and confusion, necessitating the grant of preliminary relief here." (Id.); (ii) "In the identical 2016 action[, *Canegata,*] this Court held that '[i]t is also in the public's interest to protect against confusion regarding the [VIGOP]." (Id.); and (iii) "Defendants' [sic] holding themselves out to be the VIGOP leadership and holding an improper election caucus in hopes of actually becoming the next leadership will certainly cause public confusion [and] [i]n

fact, voters have reported confusion and intimidation at the bogus caucus sites caused by Defendants and their associates." (Id.)

¶ 18    "In considering the public interest, courts should seek to prevent the parties from halting specific acts presumptively benefiting the public ... until the merits [can] be reached and a determination made as to what justice require[s]." *Yusuf*, 59 V.I. at 857-58. "Public interest can be defined a number of ways." *Id.*, 59 V.I. at 858.

¶ 19    Here, it is clearly in the public's interest to protect against potential confusion surrounding the VIGOP caused by having two groups—Plaintiffs and Defendants—use the VIGOP's name and the GOP's symbol, emblem, or insignia. Accordingly, this factor weighs in favor of the issuance of a temporary restraining order to enjoin Defendants from using the VIGOP's name and the GOP's symbol, emblem, or insignia.

¶ 20    In considering and weighing the four factors under a sliding scale standard, the Court finds that Plaintiffs have made a strong enough showing on the three factors in favor of the issuance of a temporary restraining order to establish a clear showing that they are entitled to injunctive relief in the form of a temporary restraining order. Furthermore, a clear showing of immediate and irreparable injury, loss, or damage is not required for the issuance of the temporary restraining order in this instance because Defendants had written notice of this motion. *See* V.I. R. Civ. P. 65(b)(1)(A) ("The court... may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.").

## II. Security Bond

¶ 21    In their motion, Plaintiffs failed to address the issue of security. V.I. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). The Virgin Islands Supreme Court explained that "[t]he purpose of this security is to guarantee that the enjoined party will be compensated for the expenses of complying with an erroneously issued injunction, as well as placing the moving party on notice of the maximum amount of compensation it could be forced to pay" and instructed that "[b]ecause [i]t is generally settled that, with rare exceptions, a defendant wrongfully enjoined has recourse only against the bond, courts should err on the high side in setting the amount of security. *Yusuf*, 59 V.I. at 860. Therefore, Plaintiffs will be required to post security in the amount of one thousand dollars ($1,000.00) with the Clerk of the Court, an amount that the Court finds reasonable under the circumstances. There is no indication that Plaintiffs suffer from financial hardship and will be unable to post such a bond.

## CONCLUSION

¶ 22    Based on the foregoing, the Court will grant Plaintiffs' motion as to their request for a temporary restraining order, issue a temporary restraining order to enjoin Defendants from using the VIGOP's name and the GOP's symbol, emblem, or insignia, order Plaintiffs to post security, schedule a preliminary injunction hearing for Plaintiffs' motion as to their request for preliminary

injunction, and consolidate the preliminary injunction hearing with the trial on the merits pursuant to Rule 65(a)(2).[6] Accordingly, it is hereby:

**ORDERED** that Plaintiffs' April 8, 2022 motion as to their request for a temporary restraining order is **GRANTED**. It is further:

**ORDERED** that Defendants are enjoined from using the "Republican Party of the U.S. Virgin Islands" name and the GOP's symbol, emblem, or insignia. It is further:

**ORDERED** that, unless otherwise ordered, the temporary restraining order enjoining Defendants from using the "Republican Party of the U.S. Virgin Islands" name and the GOP's symbol, emblem, or insignia shall **EXPIRE** at the conclusion of the preliminary injunction hearing. It is further:

**ORDERED** that, **within one (1) day from the date of entry of this Memorandum Opinion and Order,** Plaintiffs shall post security in the amount of one thousand dollars ($1,000.00) with the Clerk of the Court and file proof thereof. It is further:

**ORDERED** that a preliminary injunction hearing is scheduled for **May 6, 2022, at 9:30 a.m., in person in Courtroom 206**, for Plaintiffs' April 8, 2022 motion as to their request for preliminary injunction. It is further:

**ORDERED** that the preliminary injunction hearing shall be **CONSOLIDATED** with the trial on the merits. It is further:

**ORDERED** that copy of this Memorandum Opinion and Order shall be served on Yohana Manning, Esq. electronically. **And** it is further:

---

[6] Rule 65(a)(2) provides that "[b]efore or after the beginning a hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." V.I. R. Civ. P. 65(a)(2).

**ORDERED** that, **within three (3) days from the date of entry of this Memorandum Opinion and Order**, Plaintiffs shall serve a copy of this Memorandum Opinion and Order upon Defendants and file the proofs of service thereto.[7]

**DONE and so ORDERED this __3__ day of May, 2022.**

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____

Court Clerk Supervisor

Dated: _May 3, 2022_

HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**

---

[7] Plaintiffs failed to include any contact information for Defendants. Nevertheless, it appears that Plaintiffs have Defendants' addresses and the ability to serve Defendants since Plaintiffs' counsel Yohana Manning, Esq. personally served Defendants with a copy of this instant motion. (Manning Aff. ¶ 2.) As such, the Court will entrust Plaintiffs with the duty of serving this Memorandum Opinion and Order upon Defendants.